CARAWAY, J.
| ,This case concerns the procedures for requesting and maintaining the medical review panel under the Medical Malpractice Act (“MMA”), and their effect upon the running of prescription against the plaintiffs claim. After the plaintiffs filing of her claim requesting a medical review panel, no attorney chairman for the panel was appointed during the one year provided for such appointment. The plaintiff thereafter filed this suit which was met with exceptions of prescription by the defendants. The trial court ruled that plaintiffs claim had prescribed, and this appeal followed. Finding that plaintiffs actions under the MMA had suspended prescription and maintained her claim, we reverse.

Facts

On August 14, 2008, James Turner was admitted to Willis Knighton Medical Center for a right kidney transplant. James’s treating physicians were Dr. Venkates-wara Rao, Dr. Navadeep Samra, and Dr. Gazi Zibari (hereinafter collectively “the doctors”). While the transplant was successfully completed, Mr. Turner died at Willis Knighton on August 20, 2008.
As a result of James’s death, his wife, Gloria Turner (hereinafter “Turner”), filed a complaint alleging medical malpractice and requested a medical review panel. On August 20, 2009, the complaint was sent by fax and certified mail to the Division of Administration, naming as defendants Willis Knighton and the doctors. Within the Division of Administration, the | ¡Patient's Compensation Fund (hereinafter the “PCF”) received the complaint on August 26, 2009.
After this filing, the PCF notified Turner of its receipt of her claim and that Willis Knighton qualified as a healthcare provider under the provisions of La. R.S. *211 40:1299.41. While the PCF acknowledged that the complaint had been filed against the doctors, it noted that they were considered non-qualified[1] for medical malpractice purposes. The PCF’s letter also informed Turner that “the Oversight Board reserves the right to revise its qualification and coverage determination upon receipt of additional information.”
On May 24, 2010, the PCF sent Turner a letter (hereinafter “the Nine Month Letter”) via certified mail, informing her that her request for a medical review panel would be dismissed if she did not appoint an attorney chairman within one year from the date that she filed the complaint. Turner received this letter on May 28, 2010. The Nine Month Letter was also copied to the attorney representing Willis Knighton. The date of August 20, 2009, was listed at the top of the letter as the date that Turner filed her complaint. The proper procedure for appointing an attorney chairman or initiating the special strike process under La. R.S. 40:1299.47(0 was explained in the letter.
On July 14, 2010, James Caldwell enrolled as Turner’s new counsel of record. The following week, Caldwell received a letter from the PCF |sreminding him that the parties had one year from filing of the complaint to appoint an attorney chairman. On August 25, 2010, the PCF sent Caldwell a letter via certified mail (hereinafter “the Dismissal Letter”) that informed plaintiff that the claim had been dismissed for the failure to appoint an attorney chairman within the one year that ended on August 20, 2010. Although the letter was directed and addressed only to the plaintiff, through her attorney, it was copied to the defendants. In addition, the letter stated that the “filing of a request for a medical review panel shall suspend the time within which suit must be filed until 90 days after the claim has been dismissed in accordance with the Act.” Turner received the Dismissal Letter on August 27, 2010.
Following the PCF’s dismissal of her claim, Turner filed this suit asserting medical malpractice against Willis Knighton and the doctors on November 23, 2010, 90 days after the August 25, 2010 Dismissal Letter. On February 16, 2011, Willis Knighton asserted the exception of prescription seeking dismissal of the claim. The doctors also pled an exception of prescription and, alternatively, an exception of prematurity.[2]
Following the hearing on the exceptions, the trial court gave its oral reasons for judgment. The trial court decided that the May 24, 2010 Nine Month Letter adequately provided the plaintiff with notice of her deadline to either appoint an attorney chairman or have her case dismissed. The court 1¿found that the Nine Month Letter was notice that the suspension of prescription would end 90 days following August 20, 2010. Thus, the plaintiffs filing of suit which did not occur before November 19, 2010, was ruled untimely.

*212
Discussion

As argued at the hearing on the exceptions, the parties again contest in this appeal the meaning of La. R.S. 40:1299.47(A)(2)(c) (hereinafter the “Statute”). Turner argues that since notice of a dismissal was required, the special 90-day period began to run when she received the Dismissal Letter. Since the Dismissal Letter was received on August 27, 2010, Turner argues that her suit was timely filed. The defendants, on the other hand, argue that the Nine Month Letter adequately informed the plaintiff of the August 20, 2010 deadline to either appoint an attorney chairman or risk a dismissal of her claim. As a result, the defendants argue that Turner had 90 days to file suit from August 20, 2010, and thus the prescriptive clock ran out on November 19, 2010, days before Turner filed suit.
The parties do not dispute that Turner’s filing of her PCF complaint on August 20, 2009, was made on the last day of the one-year prescriptive period applicable to her medical malpractice claim. La. R.S. 9:5628; La. R.S. 40:1299.47(A)(2)(b). Turner’s mailing of the complaint by certified mail on that date to the Division of Administration resulted in the suspension of prescription, which is also undisputed.
| aThe statutory provisions governing the PCF’s mailing of both the Nine Month Letter and the Dismissal Letter are set forth in the Statute, which provides as follows:
An attorney chairman for the medical review panel shall be appointed within one year from the date the request for review of the claim was filed. Upon appointment of the attorney chairman, the parties shall notify the board of the name and address of the attorney chairman. If the board has not received notice of the appointment of an attorney chairman within nine months from the date the request for review of the claim was filed, then the board shall send notice to the parties by certified or registered mail that the claim will be dismissed in ninety days unless an attorney chairman is appointed within one year from the date the request for review of the claim was filed. If the board has not received notice of the appointment of an attorney chairman within one year from the date the request for review of the claim was filed, then the board shall promptly send notice to the parties by certified or registered mail that the claim has been dismissed for failure to appoint an attorney chairman and the parties shall be deemed to have waived the use of the medical review panel. The filing of a request for a medical review panel shall suspend the time within which suit must be filed until ninety days after the claim has been dismissed in accordance with this Section.
La. R.S. 40:1299.47(A)(2)(e).
With the parties’ dispute over the meaning of this Statute, the Civil Code directs our statutory interpretation. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10.
Courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Langlois v. East Baton Rouge 6 Parish School Bd., 99-2007 (La.5/16/00), 761 So.2d 504. Further, *213 where there are two permissible interpretations of a prescriptive statute, the courts must adopt the one that favors maintaining rather than barring the action. Bustamento v. Tucker, 607 So.2d 582 (La.1992); Holmes v. Lee, 35,021 (La.App.2d Cir.9/28/01), 795 So.2d 1232, 1237.
From our review of the Statute, it is significant that the directives for the accomplishment of the appointment of the attorney chairman are now aimed at all the “parties.” Although the plaintiff has a specific interest in maintaining her claim by timely acting to prevent the running of prescription, both sides of the dispute have a right to receive consideration of the alleged malpractice by the medical review panel. Nevertheless, the Statute clearly provides that if the “parties” do not take steps[3] for the appointment of the attorney chairman within the one-year time period, “the parties shall be deemed to have waived the use of the medical review panel.” This new procedure and its effect result from a 2003 amendment of the MMA. Prior to amendment, in Yokem v. Sisters of Charity of the Incarnate Word, 32,402 (La.App.2d Cir.6/16/99), 742 So.2d 906, we found that the former law placed the burden entirely on the claimant to secure the appointment of the attorney chairman.
With the possibility of such a waiver of the review panel by the inaction of the accused healthcare provider, the nine-month letter required in the Statute serves the purpose of notification to the healthcare provider of the potential of that waiver. In addition, the letter alerts the plaintiff to the 17possible dismissal of her claim and the end of the suspension of prescription effected by the PCF filing. The Statute then provides a second notice by the PCF in the event the “parties” do not attempt or complete the process for the appointment of the attorney chairman and dismissal occurs.
In an analogous setting involving similar dual provisions of the MMA, the Supreme Court in Thibodeaux v. Donnell, 08-2436 (La.5/5/09), 9 So.3d 120, ruled that notice of dissolution of the review panel was the critical event for the recommencement of the running of prescription, even though the review panel’s failure to have rendered a timely opinion had automatically resulted in the allowance for the plaintiffs filing of suit. In that case, the parties had appointed an attorney chairman but the medical review panel did not render an opinion during the panel’s year-long term. Subsequently, the plaintiff filed a lawsuit four months after the medical review panel was dissolved as a matter of law according to La. R.S. 40:1299.47(B)(l)(b). Even though the PCF had previously notified the parties that the review panel would be dismissed in a year if the panel did not timely render an opinion, the Supreme Court held that the second statutory notice of the panel’s dissolution under La. R.S. 40:1299.47(B)(3) was the event that began the special 90-day period before the suspension of prescription could end.
Just as the dissolution of the review panel occurred by operation of law upon the passage of its one-year term in Thibo-deaux, the one-year term for appointing the attorney chairman expired on August 20, 2010, in this case, resulting in the parties’ waiver of the use of the review panel. ^Nevertheless, Thibodeaux recognized that the special notice to the plaintiff of the review panel dissolution was the more specific provision of the MMA which governed the recommencement of prescription and comported “with due process concerns.” Id. at 126. Likewise, in this case, we find that the specific notice of the *214 Dismissal Letter was the governing event for the recommencement of prescription. We find no inherent conflict or repetition resulting from the nine-month letter and the dissolution notice set forth in the Statute, as both serve differing purposes. With the possibility that the parties’ negotiations or process for appointment of the attorney chairman could lead to confusion or dispute on the eve of the running of the one year, the legislature specified that the PCF’s notice of dismissal was the crucial event regarding prescription.
Finally, since the doctors’ argument admits the application of the Statute to the resolution of the issue of prescription, the Statute’s provision concerning the parties’ waiver of the use of the medical panel likewise governs the doctors’ alternative plea of prematurity. Accordingly, the plaintiffs suit was not premature.

Conclusion

The grant of the defendants’ exceptions of prescription is reversed and the case remanded. Costs of appeal are assessed to defendants.
REVERSED AND REMANDED.

. The PCF initially denied their status as healthcare providers. Later, however, the PCF informed Turner in June 2010 that the doctors qualified under the provisions of La. R.S. 40:1299.39.1.

. In their exception of prematurity, the doctors argued that the claim was dismissed without a medical review panel opinion and thus Turner has to refile her claim rather than filing in district court. The doctors made no argument that the claim was premature against them due to any time delay resulting from the fact that the PCF did not initially quality them as healthcare providers under La. R.S. 40:1299.39.1. Therefore, we decide the issue of prescription herein considering that all actions taken or not taken by plaintiff applied for the measure of the same prescriptive time period running against her claims against all defendants.

. La. R.S. 40:1299.47(0 is provided as a special striking process which either side of the dispute can institute if the parties cannot otherwise agree on an attorney chairman.